UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRIAN HUNTER                                              CIVIL ACTION

VERSUS                                                    NO. 07-9009

SERV-TECH, INC, ET AL.                                    SECTION "N" (1)

# O R D E R and R E A S O N S

Before the Court is a Motion to Dismiss (R. Doc. 105) for lack of personal jurisdiction by Defendant, ServTech Limited ("ServTech"), filed pursuant to Federal Rule of Civil Procedure 12(b)(2) on June 29, 2009. The motion is opposed. Having considered the pleadings, the original and supplemental memoranda, and the applicable law, the Court rules as set forth herein.

## I. BACKGROUND

On August 11, 2007, Plaintiff Brian Hunter ("Hunter") was working as an electrician in international waters off the coast of Africa, on board the M/V JASCON 9. Dynamic Industries, Inc. ("Dynamic") chartered the ship from Offshore Contractors Limited ("Offshore"), in furtherance of a contract with Chevron U.S.A., Inc. ("Chevron") to perform certain operations in oilfields Chevron controls off the coast of Angola. Hunter alleges he sustained injuries while employed by T.E.S.T. Automation & Controls, Inc. ("T.E.S.T.") when a pulley-block from a davit crane malfunctioned, came loose, and struck Hunter on the head. Ten months prior to the

accident, Cabinda Gulf Oil Company Limited ("CABGOC"), an affiliate of Chevron U.S.A., Inc. ("Chevron"), contracted with ServTech, a Scottish company, to provide inspection services on the JASCON 9. (R. Doc. 107, App. A to Ex. 4). Hunter filed suit under general maritime law, claiming failure to train and supervise, negligent operation, hazardous conditions, and unsafe work environment. Named as Defendants, besides ServTech, are Offshore Contractors Limited (which has filed a separate motion to dismiss that is not before the Court in the instant Order), T.E.S.T Automation & Controls, Inc., the M/V JASCON 9, Dynamic Industries, Inc., and Chevron U.S.A., Inc.

ServTech previously moved to dismiss for lack of personal jurisdiction. The Court denied the motion without prejudice but granted Plaintiff leave to conduct limited discovery on the subject of ServTech's contacts with the United States. (R. Doc. 84). ServTech now renews its motion to dismiss for lack of personal jurisdiction.

## II. ANALYSIS

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that personal jurisdiction exists. *See Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When a court rules on this issue without a full evidentiary hearing, plaintiffs need only make a prima facie showing of jurisdiction. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). In determining whether plaintiffs have made a prima facie showing of jurisdiction, the Court accepts as true the allegations in the complaint, unless controverted by opposing affidavits, and resolves all factual conflicts in favor of the plaintiff. *Id.* In making its determination, the Court may consider "affidavits, interrogatories, depositions, oral

testimony, or any combination of . . . recognized [discovery] methods." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

A court has personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) the forum state's exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *See Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Because Louisiana's long-arm statute extends jurisdiction to the full limits of due process, *see* LA. REV. STAT. § 13:3201(B), the Court must determine only whether the exercise of its jurisdiction in this case satisfies federal due process requirements. The exercise of personal jurisdiction over a nonresident defendant satisfies due process when (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with that state and (2) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw*, 167 F.3d at 211 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Minimum contacts may give rise either to "specific" personal jurisdiction or "general" personal jurisdiction. *See id.* Specific jurisdiction exists when a plaintiff's cause of action arises from or is related to the defendant's minimum contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984); *Wilson*, 20 F.3d 644 at 647. General jurisdiction will attach, even if the act or transaction sued upon is unrelated to the defendant's contact with the forum state, if the defendant has engaged in "systematic and continuous" activities in the forum state. *See Helicopteros*, 466 U.S. at 414 n.9; *Wilson*, 20 F.3d at 647.

To determine whether specific jurisdiction exists, courts examine whether the defendant purposefully availed himself of the privileges of conducting activities in the forum state, and whether the cause of action arises out of or relates to those activities. *See Guidry v. United States Tobacco Co., Inc*., 188 F.3d 619, 625 (5th Cir. 1999); *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc*., 754 F.2d 542, 547-48 (5th Cir. 1985). A defendant's connection with the forum state must be such that he "should reasonably anticipate being haled into court" there. *Latshaw*, 167 F.3d at 211 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). To determine whether specific jurisdiction exists, the Fifth Circuit has developed a three-step analysis. *Seiferth v. Helicopteros Atuneros, Inc*., 472 F.3d 266, 271 (5th Cir. 2006). The Court must look to (1) whether the defendant had minimum contacts and purposefully directed its activities toward the forum state or purposefully availed itself of conducting activities there; (2) whether the cause of action arises out of defendant's contacts with the forum state; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Id*. (citing *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)).

The fact that a plaintiff entered into a contract with an out-of-state party cannot by itself establish personal jurisdiction. *Burger King Corp. v. Ruzeqics*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). "But, when a nonresident defendant voluntarily enters into a contract which contemplates business activity by a forum-state entity foreseeable to the nonresident defendant, such action establishes a minimum contact sufficient for a valid exercise of jurisdiction over the nonresident defendant." *Consolidated Cos., Inc. v. Kern*, 2000 WL

1036186, at *3 (E.D. La. 2000) (citing *Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1007 (5th Cir. 1982)). In a breach of contract case, among the factors that a court should consider in determining whether there has been purposeful availment are prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing. *Stuart*, 772 F.2d at 1193 (citing *Burger King*, 471 U.S. at 479).

Once a court determines that a plaintiff's cause of action arose out of defendant's minimum contacts with the forum state, that court will next consider whether asserting specific jurisdiction offends "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. This prong of the analysis requires consideration of "the interest of the state in providing a forum for the suit, the relative conveniences and inconveniences to the parties, and the basic equities." *Stuart*, 772 F.2d at 1191 (quoting *Southwest Offset, Inc. v. Hudco Publ'g Co.*, 662 F.2d 149, 152 (5th Cir. 1980)).

**A. The sufficiency of ServTech's minimum contacts with Louisiana**

In this case, the Court concludes that ServTech does not have minimum contacts with Louisiana sufficient to justify the exercise of specific jurisdiction over the company under the state's long-arm statute. Hunter predicates specific jurisdiction over ServTech on an indemnity agreement. Through its contract with CABGOC, a Bermuda company, ServTech agreed to "defend and indemnify indemnitees from and against any and all loss, damage, injury, liability … related thereto for injury to or death of any person." *Id.* at 2. "Indemnitee" is defined within the contract to include COBGOC and its affiliates. *Id.* The definitions section also makes clear that "affiliates … expressly includes Chevron Corporation and Chevron U.S.A., Inc." *Id.* Thus, Chevron is an indemnitee under the contract, and ServTech is contractually obligated to defend

5

Chevron. Plaintiff points only to the inspection service contract, and performance running therefrom, as evidence of ServTech's minimum contacts with this forum.

Hunter argues that ServTech has purposely availed itself of the benefits and protections of Louisiana by (1) contracting with CABGOC, an affiliate of Chevron, pursuant to the inspection service agreement; (2) agreeing through that contract to indemnify Chevron; and (3) performing work upon a vessel charted by Dynamic, another Louisiana corporation. (R. Doc. 107, p. 6).

Plaintiff asserts that "Chevron contracted with ServTech Limited to inspect the davit crane." (R. Doc. 107, p. 6). This is a misstatement of the facts: the contract plainly states that "this Agreement is made between Cabinda Gulf Oil Company Limited (Company) and Servtech Limited (Contractor)." (R. Doc. 107-6, App. A to Ex. 4). ServTech contracted to render services to CABGOC, not Chevron, and Chevron is not a signatory to the contract. *Id.* Even if ServTech had contracted with Chevron, ServTech would still not be subject to the Court's jurisdiction on that basis. It is well settled that merely contracting with a resident of the forum is insufficient to subject the nonresident to the forum's jurisdiction. *Burger King*, 471 U.S. at 478; *Colwell Realty Investments, Inc. v. Triple T Inns of Arizona, Inc.*, 785 F.2d 1330, 1334 (5th Cir. 1986).

Additionally, the Fifth Circuit consistently looks to the place of contractual performance to determine whether the making of a contract with a resident of the forum is sufficiently purposeful to satisfy the minimum contacts requirement. *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992). The negotiations concerning the services to be provided by ServTech aboard the JASCON 9 were conducted in Launda, Angola, and

Aberdeen, Scotland. (R. Doc. 105-6, ¶ 10). The contract contemplated performance in Angola,[1] and indeed, all material performance took place off the coast of Angola.

Moreover, CABGOC's status as an "affiliate" of Chevron does not affect its contractual partners' (in this case, ServTech's) amenability to suit in this forum. As a general rule, "the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated." *Freudensprung v. Offshore Technical Services, Inc.,* 379 F.3d 327, 346 (5th Cir. 2004). This case presents an even more tenuous link. If a court cannot premise personal jurisdiction over a nonresident upon its affiliate's contacts with a forum, this Court certainly will not premise personal jurisdiction over a nonresident (ServTech) because of a contract with another nonresident (CABGOC) that happens to be an affiliate of a corporate entity (Chevron) that is present in this forum.[2]

The Court finds equally irrelevant the argument that the inspection service agreement's indemnity clause put ServTech "on notice that they could be required to defend or indemnify in the United States and specifically in Louisiana" (R. Doc. 107, p. 6). While ServTech is contractually obligated to defend and indemnify CABGOC and Chevron for losses arising from its performance of the inspection service agreement, execution of an indemnity agreement is not a purposeful direction of activities toward Louisiana such that specific jurisdiction may be asserted. *See J.M. Huber Corp. v. Pan American Express, Inc.*, 118 F. Supp. 2d 764, 769 (S.D.

---

[1] The Contract defines "Area of Operations" to mean the Company's (CABGOC's) operations and facilities in the "Country," defined to mean Republic of Angola. (R. Doc. 106, App. A to Ex. 4).
[2] For this reason also, the Court's decision is not swayed by the fact that ServTech performed inspection services on a vessel charted by Dynamic, a Louisiana company to whom ServTech Limited was not contractually related, particularly when ServTech was unaware that the JASCON 9 was chartered by a Louisiana-based company (R. Doc. 105-6, ¶ 12).

Tex. 2000). The inspection service agreement does not on its face contemplate lawsuits in Louisiana. An indemnification agreement certainly contemplates the possibility of litigation, but it does not represent the sort of purposeful direction of activities toward the forum state required for specific jurisdiction to attach.[3]

**B. Rule 4(k)(2) Jurisdiction**

Hunter argues in the alternative that ServTech has purposely availed itself of the United States as a whole and, thus, is subject to the Court's jurisdiction pursuant to Rule 4(k)(2), which reads in relevant part:

> For a case that arises under federal law, serving a summons or filing a waiver of services establishes personal jurisdiction over a defendant if:
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2). This rule has been applied in cases brought under the general maritime law, where the defendant has sufficient minimum contacts with the United States as a whole but is not subject to jurisdiction in any particular state. *See World Tanker Carriers Corp. v. M/V YA MAWLAYA,* 99 F.3d 717, 722-23 (5th Cir. 1996). The contacts must be such that exercising jurisdiction comports with traditional notions of fair play and substantial justice. When a party invokes Rule 4(k)(2), "a piecemeal analysis of the existence *vel non* of jurisdiction in all fifty states is not necessary. Rather, so long as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2) to confer jurisdiction." *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004) (citing *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d

---

[3] Because the Court concludes that the inspection service agreement does not constitute minimum contact sufficient to invoke specific jurisdiction, the Court does not reach the questions of whether the claim "arises from" ServTech's contacts with the forum or whether exercising jurisdiction over ServTech would offend "traditional notions of fair play and substantial justice."

548, 552 (7th Cir. 2001)). When determining the sufficiency of minimum contacts for general jurisdiction under Rule 4(k)(2), courts consider whether the nonresident defendant: (1) transacts business in the United States; (2) performs an act in the United States; or (3) performs an act elsewhere which has an effect in the United States. *Stutzman v. Rainbow Yacht Adventures Ltd.*, 2007 WL 415355, at *3 (N.D. Tex. Feb. 7, 2007).

Limited discovery sanctioned by this Court revealed that ServTech owns or operates no offices, warehouses, manufacturing facilities, or other places of business in the United States. It is not licensed, registered, or authorized to do business in any state, conducts no marketing or advertising in this country, has no registered agents here, pays no taxes here, and holds no banking accounts here. However, Plaintiff did establish that ServTech technicians performed work for Petroleum Supply, a Texas-based company, "pursuant to verbal request" on four occasions between November 2005 and April 2006. *Id.* at 14. Eleven of ServTech Limited's technicians were "involv[ed]" in the performance of these contracts, and several of these employees were involved in performing more than one of the four contracts. *Id.* The employees involved in the work described are all foreign nationals who reside overseas, and while ServTech does not explicitly state that the technicians came to the United States, the interrogatory requests information concerning contracts "performed in the United States," so the Court can only conclude that these technicians did indeed enter the U.S. or its territorial waters to perform the work. ServTech did not speak to the nature of its employees' "involvement" in performing these contracts and the Court has no information concerning the portion of ServTech's total revenues or activities these contracts comprise. Nor is there any information as to whether future business activities in the United States are anticipated. Nonetheless, while the question is a close one,

9

given the recent nature of these activities within the United States, the Court concludes that Plaintiff has made his *prima facie* case that ServTech is amenable to suit pursuant to Rule 4(k)(2) based on its contacts with the United States. The Court further concludes that exercising jurisdiction over ServTech comports with traditional notions of fair play and substantial justice, given its activities in the United States.

### III. CONCLUSION

As set forth above, **IT IS ORDERED** that the motion is **DENIED**. Chambers will shortly contact all parties to hold a telephone conference to prepare a scheduling order in this matter and to set it for trial.

New Orleans, Louisiana, this 6th day of August, 2009.

_____
**KURT D. ENGELHARDT**
**United States District Judge**