UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BRIAN HUNTER | CIVIL ACTION |
| VERSUS | NO. 07-9009 |
| SERV-TECH, INC.<br>ET AL. | SECTION "N"  (3) |

## **ORDER AND REASONS**

Before the Court is Defendant Offshore Contractors Limited's Motion to Dismiss or Stay Cross Claim of Dynamic Industries, Inc. For Breach of Contract against Offshore Contractors, Ltd. (Rec. Doc. 208), which is opposed by both Dynamic Industries, Inc. ("Dynamic") (See Rec. Docs. 216 and 231) and Plaintiff Brian Hunter (See Rec. Doc. 222).  After considering the memoranda of the parties, the Court rules as set forth herein.

## I. BACKGROUND

On several occasions, this Court has briefed the background facts relating to this matter (See Rec. Docs. 69, 84, 127); thus, the Court will not repeat them herein.  Following is a description of the facts pertinent only to this motion.

Offshore Contractors, Ltd. ("Offshore") is a company organized under the laws of Guernsey and has offices located in Sleeuwijk, the Netherlands. (Rec. Doc. 208-1, P. 2). Offshore is the parent company of South Spring Investments, Limited ("South Spring"), which, in turn, is the Registered Owner of the JASCON 9, the alleged situs of Plaintiff's claimed injury.

(*Id.*) Offshore executed a Letter of Intent, dated June 18, 2007 ("June Letter of Intent", Exhibit A to Rec. Doc. 208), with Dynamic Angola, L.L.C. ("Dynamic Angola"), a Louisiana Limited Liability Company and subsidiary of Dynamic. This June Letter of Intent memorialized an agreement by which Dynamic Angola chartered the JASCON 9 for use in international waters off the coast of Africa. This June Letter of Intent was extended by a second Letter of Intent dated August 17, 2007 ("August Letter of Intent", Exhibit B to Rec. Doc. 208).

These Letters of Intent state that they will be governed by the laws of England. The Letters of Intent also provide that "[u]nless otherwise specifically provided for herein, the BIMCO Supply Time 89 will govern the relationship of the parties until a formal agreement is executed by such parties." (Exhibit A to Rec. Doc. 208, p. 2; Exhibit B to rec. Doc. 208, p. 2). The BIMCO Supply Time 89 ("the Charter Party", Exhibit C to rec. Doc. 208) is a generic form used for the chartering of vessels such as the JASCON 9. It is undisputed that the Letters of Intent do not include any other terms providing otherwise and that the parties did not thereafter enter into any formal agreement relating to the charter of the JASCON 9. Thus, the charter that is the subject of Dynamic's cross-claim against Offshore is governed by the Charter Party.

Importantly, the Charter Party contains a choice of law and dispute resolution clause. Clause 31 to the Chater Party is entitled "Law and Arbitration." Sub-paragraph (a) of that clause provides, in part, that "[t]his Charter Party shall be governed by English law and any dispute arising out of this Charter Party shall be referred to arbitration in London. . ." (Exhibit C to Rec. Doc. 208, p. 7). The Charter Party also provides two alternative dispute resolution clauses, which provide for arbitration in either New York or a location mutually agreed upon and entered in PART I, Box 33. (Exhibit C to Rec. Doc. 208, pp. 7-8). This clause further states that if New

York is not chosen, and if, in addition, a location is not entered in Box 33, then Clause 31(a) requiring arbitration in London applies by default. (Exhibit C to Rec. Doc. 208, p. 8). It is further undisputed that the parties did not make a selection under Clause 31 of the Charter Party.

Despite the language in the Charter Party, Dynamic filed a cross-claim against Offshore for alleged breach of contract, specifically, the Letter of Intent that incorporates the terms of the Charter Party. Offshore has filed the instant motion arguing that Dynamic's cross-claim should be dismissed or stayed because Dynamic is required to arbitrate any dispute with Offshore in London, and subject to English law.

## II. ARGUMENTS OF THE PARTIES

Addressing the factors set forth in *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 903 (5th Cir. 2005)[1], Offshore argues that this Court should refer this cross-claim to arbitration. First, Offshore asserts that there is a writing that memorializes the parties' agreement to arbitrate (i.e., the Charter Party and the Letters of Intent that incorporate the Charter Party), which Offshore notes are attached to and cited within Dynamic's cross-claim. Offshore argues that the subject of the cross-claim plainly falls within the ambit of the arbitration clause as the Charter Party requires that the parties arbitrate "any dispute" arising out of the

---

[1] The *Lim* Court ruled that, once a party moves to compel arbitration, the Court must address the following factors to determine whether a matter should be referred to arbitration: 1) is there is an agreement in writing to arbitrate the subject of the dispute; 2) does the agreement provide for arbitration in the territory of a signatory to the Convention; 3) does the agreement arises out of a legal relationship which is considered commercial; and, 4) is a party to the agreement not an American citizen or is the commercial relationship reasonably related to one or more foreign states. *Id.* (see also *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co.*, 767 F.2d 1140, 1145 (5th Cir.1985)). If each inquiry is answered in the affirmative, the agreement falls under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"), which has been incorporated into the Federal Arbitration Act ("FAA") as Chapter 2 thereof and codified as 9 U.S.C. § 201 – 208, and the Court is required to refer the dispute to arbitration.

3

Charter Party.

Second, Offshore argues that the Charter Party provides for arbitration in a signatory territory (i.e., London, England). Offshore notes that the United Kingdom is a signatory to the Convention.

Third, Offshore contends that the Charter Party arises out of a commercial agreement. Indeed, Offshore notes that Section 202 of Chapter 2 of the Convention provides that "[a]n arbitration agreement…arising out of a legal relationship…which is considered as commercial, including…a[n] agreement described in section 2 of this title, falls under the Convention." 9 U.S.C. § 202. Section 2, in turn, provides that a written provision in any maritime transaction shall be valid, irrevocable and enforceable. 9 U.S.C. § 2.

Fourth, Offshore states that it is not an American Citizen, and is indeed a company organized under the laws of Guernsey, and has offices located in Sleeuwijk, the Netherlands. Offshore further notes that the Letters of Intent and Charter Party are the *only* contact it has ever had with either Louisiana or the United States.

In anticipation of an argument to be made by Dynamic, Offshore asserts that it is not required to commence arbitration proceedings against Dynamic. Offshore argues that it is not the party who has filed the cross-claim (indeed, Dynamic is); however, according to the provisions in the Charter Party, Offshore claims that any such claim must be brought by way of arbitration in
London where it will be subject to English law.

In opposition, Dynamic first argues that Offshore is attempting to re-litigate issues previously addressed by the Court in its ruling granting Dynamic leave to file the underlying

4

cross-claim. (See Rec. Doc. 198).

Next, Dynamic asserts that Offshore has not and cannot produce any evidence that Dynamic has refused to participate in arbitration. Dynamic asserts that Offshore has never made a demand for arbitration and does not seek to arbitrate the matter. Dynamic asserts that Offshore is simply stalling to delay Dynamic's claim and this litigation. Last, in the event that the Court determines that referral of this cross-claim to arbitration is warranted, Dynamic argues that a stay of the cross-claim, as opposed to a dismissal, is warranted.

Interestingly, Plaintiff Brian Hunter has filed an opposition to this motion, arguing that it would be "premature an unwarranted" to stay any of these proceedings. (See Rec. Doc. 222, p. 1). Hunter asserts that, as a seaman, he is not subject to arbitration and a stay of any part of these proceedings would adversely affect him and the remaining defendants.

### III. LAW AND ANALYSIS

As an initial matter, the Court finds no merit to Dynamic's argument that Offshore is improperly attempting to re-hash or re-litigate issues relating to arbitration that have already been decided. Specifically, in its, April 15, 2010 Order (Rec. Doc. 198), wherein the Court allowed Dynamic to file the instant cross-claim, the undersigned specifically stated, "[w]hether and to what extent the subject of this cross-claim may be governed by an arbitration clause and the implications of any such arbitration clause may be addressed in subsequent motion practice, if necessary."

Next, the Court considers the merits of this motion. The FAA mandates United States district courts to stay litigation in any case raising a dispute referable to arbitration. 9 U.S.C. § 3(2009). Indeed, the FAA embodies a congressional policy in favor of strict enforcement of

5

arbitration clauses contained in commercial contracts. *Cargill Ferrous Intern. V. M/V Huta Zygmunt*, 1996 WL 229445 (E.D. La. May 6, 1996) (citing *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 19-20, 103 S.Ct. 927, 938-39 (1983)(presumption in favor of arbitrability)). The FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on the application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement....

*Id.*

Title 9 of the United States Code contains both the FAA and the U.S. implementing legislation for the Convention. When the Convention governs the recognition and enforcement of an arbitration agreement or award, the FAA applies only "to the extent that [the FAA] is not in conflict with [the Convention] or the Convention as ratified by the United States." See 9 U.S.C. § 8; *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 274 (5th Cir.), *cert. denied* 537 U.S. 1030, 123 S.Ct. 561, 154 L.Ed.2d 445 (2002). The Fifth Circuit, acknowledging that the Convention incorporates the FAA (codified at Chapter 1 of Title 9), points out that the Convention is broader:

> Both the Arbitration Act and the Convention provide that if a dispute in a pending lawsuit is subject to arbitration, the district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had." Both provide that the district court "shall make an order directing the parties to proceed to arbitration" when the site for arbitration is within the district. But § 206 of the enabling legislation for the Convention also authorizes district courts to order parties to proceed with a Convention arbitration even outside the United States.

*Viator v. Dauterive Contractors, Inc.*, 638 F.Supp.2d 641 (E.D. La. 2009) (quoting *Sedco*, 767

F.2d at 1146).

"In determining whether the Convention requires compelling arbitration in a given case," the Fifth Circuit instructs, the Court "conduct[s] only a very limited inquiry." *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 339 (5th Cir.2004)(citing *Francisco*, 293 F.3d at 274). An agreement "falls under" the Convention pursuant to Section 202, and the Court should compel arbitration if the four prerequisites previously set forth in note 1, *supra*, are met. "Once 'these requirements are met, the Convention requires the district court[ ] to order arbitration ... unless it finds that the said agreement is null and void, inoperable or incapable of being performed.' " *Sedco*, 767 F.2d at 1146) (quoting Convention, Article II(3)).

Here, for substantially the same reasons argued by Offshore, the Court concludes that all the elements set forth in *Sedco* are met. Because arbitration is a matter of contract between parties, a court cannot direct or compel arbitration without finding that the parties have expressly agreed to arbitrate the dispute in question. *Personal Security & Safety Systems, Inc. v. Motorola, Inc.*, 297 F.3d 388, 392 (5th Cir.2002). "To ascertain whether the parties have agreed to arbitrate a particular claim, we must determine: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (internal citations and quotations omitted). Doubts concerning the scope of coverage of an arbitration clause are to be resolved in favor of arbitration. *Id* . Here, the Court finds it clear that the cross-claim is subject to a valid, enforceable, and unambiguous agreement to arbitrate this dispute in London.

While Dynamic claims that "a court may not compel arbitration on its own accord, but rather may order arbitration when an aggrieved party files a motion..." (Rec. Doc. 216, p.

7

2), this is exactly the subject of the instant motion. Dynamic further argues that arbitration may be compelled "only when one party has failed, neglected, or refused to comply with an arbitration agreement" (Rec. Doc. 216, p. 2); however, Dynamic fails to acknowledge that, by filing this cross-claim against Offshore in this forum, and in opposing this motion, it has "neglected, or refused to comply with an arbitration agreement." Also, while it is true that Offshore has not initiated or attempted to initiate arbitration proceedings against Dynamic (Rec. Doc. 216, p. 3), it is also true that Offshore, as the defendant to this cross-claim, is under no obligation to initiate arbitration proceedings. Dynamic, as the party asserting claims against Offshore for breach of contract, is obligated, pursuant to the unambiguous provisions in the Charter Party, to pursue any claims it may wish to assert against Offshore through arbitration in London, England, subject to English law. Further, because this Court is only referring to arbitration the cross-claim brought by Dynamic against Offshore, it finds it more appropriate to stay only this cross-claim, rather than dismiss it. See *Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307, 311 (5th Cir. 2003). All the other claims asserted in this matter shall proceed to trial and are unaffected by this limited stay.

Last, the Court concludes that Plaintiff's opposition to this motion is without merit and of no moment. Plaintiff has nothing to do with whether Dynamic's cross claim against Offshore should be dismissed or stayed because of an arbitration clause in the contract on which Dynamic bases its claim for breach of contract. The stay of Dynamic's cross-claim against Offshore will in no way prejudice Plaintiff's claims against these or other defendants in this matter.

## IV. CONCLUSION

Considering the foregoing, **IT IS ORDERED** that **Defendant Offshore Contractors**

**Limited's Motion to Dismiss or Stay Cross Claim of Dynamic Industries, Inc. For Breach of Contract against Offshore Contractors, Ltd. (Rec. Doc. 208)** is **GRANTED** to the extent that arbitration is compelled and the cross-claim filed by Dynmic against Offshore is stayed.

**IT IS FURTHER ORDERED** that the **Cross Plaintiff Dynamic Industries, Inc. Partial Motion for Summary Judgment Against Cross defendant Offshore Contractors, Ltd. (Rec. Doc. 259)** is **DENIED AS MOOT**, based on the stay of this claim. If this cross-claim is reopened in the future, such motion may be re-filed, if necessary.

New Orleans, Louisiana, this 9th day of August, 2010.

                                **KURT D. ENGELHARDT**
                                **UNITED STATES DISTRICT JUDGE**